**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| ***In re UPS Tariff Litigation*** | **PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Case No.: 1:26-cv-2097-VMC<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiffs Aipara Kulzhanova, Jovan Pabon, Nicholas Semrau, and Monique Kelly, (together, "Plaintiffs"), individually and on behalf of all others similarly situated, bring this Consolidated Class Action Complaint against Defendant United Parcel Service, Inc., ("Defendant" or "UPS") and allege, upon personal knowledge as to Plaintiffs' own actions and to counsels' investigation as to all other matters, as follows:

## INTRODUCTION

1. For almost a year, the federal government charged tariffs on certain products imported into the United States, under the International Emergency Economic Powers Act ("IEEPA"). The President sought to impose tariffs under the IEEPA by declaring a national emergency tied to two alleged foreign threats: the rise

of illegal drugs from foreign nations and large trade deficits.

2. On February 20, 2026, the Supreme Court of the United States held that those tariffs were not authorized by the IEEPA and were thus invalid—in other words, they were illegal from the moment they were imposed.

3. Since the imposition of the illegal IEEPA tariffs, UPS charged and collected tariffs (also known as import duties) and tariff-related fees from consumers and businesses like Plaintiffs. This class action lawsuit arises from UPS's practice of levying those illegal import duties and collecting processing and other tariff-related fees.

4. In many situations, like the one at issue in this case, the party that ultimately paid the tariff was undisputedly the consumer. Consequently, those consumers are entitled to a refund of the tariffs paid. This is especially true when entities receive a refund—and several of those entities, including UPS, are already seeking and receiving such refunds. As of the end of June 2026, UPS had already been refunded over $200,000,000 and approved for at least another $300,000,000 in refunds. UPS claims it is owed $5 billion in IEEPA tariff refunds in total.

5. In other words, UPS seeks to recover billions of dollars for which it served merely as a conduit between consumers and the federal government.

6. This action presents an actual, concrete controversy that is ripe for adjudication. UPS collected from businesses and consumers like Plaintiffs and Class

Members both unlawful IEEPA duties and tariff-related fees that were never lawfully authorized. As such, Plaintiffs and Class Members are entitled to reimbursement of all tariffs and tariff-related fees that UPS unlawfully charged, plus interest.

## PARTIES, JURISDICTION & VENUE

7. Plaintiff Aipara Kulzhanova is and at all relevant times was a citizen of the State of North Carolina. Aipara Kulzhanova is a resident of the State of North Carolina and intends to remain domiciled in North Carolina.

8. Plaintiff Jovan Pabon is and at all relevant times was a citizen of the State of New York. Jovan Pabon is a resident of the State of New York and intends to remain domiciled in New York.

9. Plaintiff Nicholas Semrau is and at all relevant times was a citizen of the State of Kansas. Nicholas Semrau is a resident of the State of Kansas and intends to remain domiciled in Kansas.

10. Plaintiff Monique Kelly is and at all relevant times was a citizen of the State of South Carolina. Monique Kelly is a resident of the State of South Carolina and intends to remain domiciled there.

11. Defendant United Parcel Service, Inc. is an Ohio corporation registered with the state of Georgia as a Foreign Profit Corporation with its principal place of business at 55 Glenlake Parkway NE, Atlanta, Georgia 30328. UPS is a licensed

customs broker that serves as the importer of record and filer of entry for consumer shipments transported through UPS's international shipping services, including Plaintiffs' shipments at issue in this action. UPS advanced the IEEPA duties, then collected the advance from consumers and is now seeking recovery of the IEEPA duties that were funded by consumers, including Plaintiffs and proposed Class Members.

12. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332, because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant. This Court also has supplemental jurisdiction over the claims in this case pursuant to 28 U.S.C. § 1367(a) because all claim alleged herein form part of the same case or controversy under Article III of the United States Constitution.

13. The Court has jurisdiction to enter declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties regarding Defendant's obligation to return to the consumers who paid them the IEEPA duties and fees Defendant collected, and to return any IEEPA duty refunds Defendant recovers from the United States.

14. This Court has personal jurisdiction over Defendant, because its

principal place of business is in this District. Defendant has also purposefully availed itself of the laws, rights, and benefits of the State of Georgia.

15. Venue is proper under 28 U.S.C. § 1391 because Defendant resides in this District and maintains a principal place of business in this District and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in and emanated from this District.

## FACTUAL ALLEGATIONS

### A. IEEPA Tariffs at Issue

16. Enacted in 1977, the IEEPA gives the President certain tools to address unusual and extraordinary foreign threats to American national security, foreign policy, or the economy.

17. If the President identifies such a threat, IEEPA allows him or her to "investigate, block during the pendency of an investigation, regulate, direct and compel, nullify, void, prevent or prohibit, any acquisition, holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest." 50 U.S.C. § 1701(a), 1702(a)(1)(B).

18. On February 1, 2025, the President of the United States invoked IEEPA to impose tariffs on goods from Mexico, China, and Canada. Executive Orders 14193, 14194, and 14195.

19. The President later issued several executive orders regarding the use of the IEEPA to impose tariffs, including on April 2, 2025, when he declared a national emergency related to foreign trade and economic practices and imposed "Reciprocal Tariffs" of 10% on products of all countries effective April 5, 2025, and additional country-specific rates effective April 9, 2025. Executive Order 14257, "Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trades Deficits," 90 Fed. Reg. 15041, dated April 2, 2025 ("Reciprocal Tariffs").

20. Beginning in February 2025, Defendant imposed and collected tariffs and tariff-related charges from consumers that were purportedly authorized under the IEEPA.

21. The IEEPA tariffs and tariff-related fees were not a part of the price paid for the goods being shipped or the price of shipping itself, but instead were treated and billed separately by Defendant.

**B. IEEPA Tariffs were Unlawful *Ab Initio***

22. Numerous importers challenged the legality of the IEEPA tariffs, arguing the President lacked statutory authority under the IEEPA to impose tariffs

of that nature.

23. On February 20, 2026, the Supreme Court of the United States ruled in *Learning Resources Inc. v. Trump*, 607 U.S. 229, 252 (2026) that the IEEPA did ***not*** grant the President "the power to impose tariffs," and that the IEEPA tariffs imposed by the federal government were illegal from their inception.

24. In holding that the IEEPA tariffs were illegal, the Supreme Court noted the following:

a. The section of IEEPA cited by the government never mentions tariffs (*id.* at 248);

b. IEEPA had never been used by any President to impose tariffs (*id*. at 245);

c. The Constitution reserves the powers to tax and impose duties for Congress (*id.* at 240-1); and

d. The enormous scope of the tariffs that President Trump sought to impose represented an "extraordinary power" that lacked "clear congressional authorization" (*id* at 255).

25. For each of those reasons, the Supreme Court held that the IEEPA has never granted the President unilateral authority to impose tariffs, and that the IEEPA tariffs imposed by President Trump were illegal from their inception.

26. As a result of that decision, the IEEPA tariffs that Defendant passed through to Plaintiffs and Class Members, as well as fees that were based on IEEPA tariffs, are unlawful, invalid, and void from their inception.

27. Despite lacking lawful authority, Defendant charged, collected, and

retained tariff and tariff-related fees from Plaintiffs and Class Members.

**C. UPS's Role as a Customs Broker and Importer of Record**

28. Although UPS provides many services, of relevance here is that UPS serves as a customs broker and importer of record when goods are shipped internationally into the United States via UPS.

29. In its capacity as a customs broker and importer of record, UPS makes payments for duties, taxes, and fees to U.S. Customs and Border Protection ("CBP") on behalf of the business or consumer who is receiver of the imported goods. UPS then invoices and collects those amounts that it paid to CBP from the business or consumer, as well as additional tariff-related fees.

30. When UPS invoices a business or a consumer for tariffs and tariff-related fees, UPS separately lists such tariffs and fees as separate and distinct from the price paid for the item being shipped and from the cost of transporting the item.

31. Therefore, it is the individual business or consumer, not UPS, who actually pays the tariff. UPS merely serves as a pass-through entity that pays the duty to CBP and then collects reimbursement from the business or consumer along with additional charges—administrative brokerage, disbursement, and late fees—that are collected and retained by UPS to increase its profit.

32. Such ancillary fees were often greater than the duties imposed under the IEEPA.

33. UPS represented to consumers that these charges were mandatory, reflected actual incurred tariff costs, and were calculated based upon lawful customs valuation methodology.

34. The consumer bore the economic burden of the tariff, not Defendant.

35. The IEEPA tariffs were never intended to serve as sources of profit for businesses.

### D. UPS Receives Refund as Importer of Record Despite Not Paying Tariffs

36. On March 4, 2026, the Court of International Trade, in *Atmus Filtration, Inc. v. United States*, ordered CBP to stop liquidating IEEPA duties and to reliquidate previously liquidated IEEPA duties where possible, and indicated that the relief extended to "all importers of record" that paid IEEPA duties, including importers that had not filed their own refund suits.[1]

37. In response, CBP implemented the Consolidated Administration and Processing of Entries (CAPE) system. The CAPE system permitted entities to apply for IEEPA tariff refunds, which would be processed in a streamlined fashion.

38. However, CBP only made the CAPE system available for importers of record, like UPS, to apply for and receive refunds. CBP did not provide a manner for consumers like Plaintiffs and Class Members who ultimately paid the IEEPA

[1] *See Atmus Filtration, Inc. v. United States*, No. 26-01259, (Ct. Int'l Trade Mar. 4, 2026), ECF No. 21.

tariffs to collect refunds.

39. UPS announced to its investors that it has "remitted over $5 billion to the U.S. Treasury" in IEEPA tariffs.[2]

40. Given the CBP's phased approach to processing refund requests through the CAPE system, UPS announced it will "apply[] for tariffs of 2.5 million entries, a little under $500 million."[3]

41. UPS further announced its intention to issue some amount of refunds to consumers. In its Q1 2026 earnings call, UPS CEO Carol Tomé acknowledged that UPS is "just a pass-through" and that "as soon as we get that money, we're going to remit it right back to our customer."[4]

42. On July 28, 2026, UPS announced that CBP approved its refund application of "approximately $500 million of IEEPA tariffs". As of June 30, 2026, UPS had received approximately $200 million of its $500 million approved refund.[5]

43. However, UPS is not adhering to its CEO's claim to remit money to consumers as soon as they receive it. Instead, UPS has chosen to retain this money for appreciable periods of time before remitting such money, if at all.

---

[2] https://www.alphaspread.com/security/nyse/ups/investor-relations/earnings-call/q1-2026

[3] *Id.*

[4] *Id.*

[5] https://investors.ups.com/sec-filings/all-sec-filings/content/0001628280-26-053249/0001628280-26-053249.pdf

44. In addition, UPS has explicitly refused to refund any of the ancillary but related fees that resulted from the void and invalid IEEPA tariffs.[6] As stated by UPS:

> **Will UPS refund administrative, brokerage and disbursement fees?**
>
> Administrative fees were incurred for the services of rating and assessing IEEPA tariffs, which were legal and valid at the time of the charge. These fees are nonrefundable.

45. UPS was unjustly enriched by collecting and retaining money to which it was not legally entitled, including receiving refunds of those tariffs from the CBP. Because UPS acted as a conduit, Plaintiffs and Class Members paid IEEPA tariffs. Although UPS announced after Plaintiffs filed suit that it would be refunding the tariffs it received, it has since said it would not do so for 1-3 months after receiving the funds from the government. By collecting a refund and using those funds for its own benefit for months, UPS is unjustly enriching itself at the expense of Plaintiffs and Class Members, including, but not limited to, receiving interest from the monies it is receiving that is rightfully that of consumers, but is being held by UPS. Put another way, UPS is profiting from the IEEPA tariffs UPS charged Plaintiffs and the Class Members.

46. Defendant was not authorized by contract, statute, or law to charge or

---

[6] https://www.ups.com/us/en/shipping/international-shipping/tariffs/tariff-refunds

retain unlawful tariff-related fees.

47. UPS charged consumers for the IEEPA tariffs and related fees separately from what they charged consumers for their shipping services. Consumers were charged for the tariffs and related fees at a different time from when UPS charged for ordinary shipping services. Those shipping charges were typically assessed to different entities, as most consumers such as Plaintiffs did not even contract with UPS for the delivery of goods they purchased internationally. Because of that, the charges for tariffs and related fees were not subsumed within the total cost of UPS's shipping services.

48. On information and belief, Defendant would often not even inform consumers that they owed duties until the day a package was to be delivered.

49. Defendant led consumers to believe that they had no choice but to pay duties and related fees in order to receive their package, and Defendant sometimes led consumers to believe that on the day the package was delivered or shortly beforehand.

50. Defendant was unjustly enriched by collecting and retaining money to which it was not legally entitled.

51. Plaintiffs and Class Members suffered economic injury as a direct result of Defendant's conduct, including payment of unlawful tariff-related charges and associated fees.

52. Defendant's conduct was uniform and systematic, affecting thousands of consumers nationwide, and was carried out pursuant to standardized policies and practices.

53. In practical terms, UPS has received, and will continue to receive, a windfall: it has already recouped tariff costs from consumers in addition to ancillary fees that resulted from the void and invalid IEEPA tariffs, and it has and will continue to recover those same unlawful tariff payments from the federal government. Absent relief from this Court, UPS will continue to retain funds obtained through unlawful charges.

## PLAINTIFFS' ALLEGATIONS

### *Plaintiff Aipara Kulzhanova*

54. On or around October 5, 2025, Plaintiff Kulzhanova placed an order for around $600.00 for a motorcycle jacket and pants for personal use from a merchant in China. Upon information and belief, the products were shipped from the United Kingdom to Plaintiff Kulzhanova via UPS.

55. When she placed the order, Plaintiff Kulzhanova did not know that UPS would be the company responsible for shipping the goods to her, nor did she know that she would be assessed a tariff and related fees.

56. At no point during the purchase process did Plaintiff Kulzhanova select UPS to ship her the goods she had purchased.

57. Plaintiff Kulzhanova did not learn that UPS was shipping her the goods until November 3, 2025, when she received an email from UPS.

58. This email did not inform Plaintiff Kulzhanova of any tariffs or duties she was responsible for paying.

59. Also on November 3, UPS sent Plaintiff Kulzhanova an email informing her that her package had cleared customs. This email also neglected to inform Plaintiff Kulzhnova that she owed any money for tariffs or associated fees.

60. On November 5, 2025, UPS attempted delivery to Plaintiff Kulzhnova's home. UPS left a notice at Plaintiff Kulzhanova's door notifying her that she owed $210.13 in tariffs and associated fees to UPS. This was the first time Plaintiff Kulzhanova had been informed that she would owe any tariffs at all.

61. Disturbed by the significant amount of the tariffs and fees, Plaintiff Kulzhanova tried repeatedly to reach UPS, at one point waiting on hold for over an hour on November 6. She hoped to see if she could potentially return the item given the significant expense of the tariffs that UPS had neglected to inform her about. Frustratingly, she was unable to reach anyone at UPS that could help her.

62. Plaintiff Kulzhanova did not pay the tariffs at this time.

63. Later in November, UPS delivered the package to Plaintiff Kulzhanova's door with no notices or information attached.

64. On or around December 2025, Plaintiff Kulzhanova discovered while

at her parents' house for the holidays that she had received an invoice at her parents' address from UPS directing her to pay $210.13 in IEEPA tariffs and/or fees related to the purchase, plus a $20.80 late fee.

65. On December 26, 2025, Plaintiff Kulzhanova paid the $210.13 in IEEPA tariffs and/or fees to UPS and the $20.80 in late fees associated with the IEEPA tariffs in order to receive her package.

66. At no point did Plaintiff Kulzhanova form a contract with UPS regarding the shipment of the package at issue.

***Plaintiff Jovan Pabon***

67. On or around January 13, 2026, Plaintiff Pabon placed an order for car parts for personal use from Gameon Motorsports in Australia. Upon information and belief, Gameon Motorsports shipped the products from Dubai, United Arab Emirates to Plaintiff Pabon via UPS.

68. When he placed the order, Plaintiff Pabon did not know that UPS would be the company responsible for shipping the goods to him, nor did he know that he would be assessed a tariff and related fees.

69. At no point during the purchase process did Plaintiff Pabon select UPS to ship him the goods he had purchased.

70. Plaintiff Pabon did not learn that UPS was shipping him the car parts until UPS emailed him on January 31, 2026, to inform him that he had a package

incoming.

71. This email told him that "additional charges may have been applied based on recent tariff policy changes" but did not inform him with any level of certainty that he did incur additional charges or what the amount or source of those charges might have been.

72. On February 2, 2026, Plaintiff Pabon received an invoice via e-mail from UPS directing him to pay $75.95 in IEEPA tariffs and/or fees related to the purchase.

73. On February 2, 2026, Plaintiff Pabon paid $75.95 in IEEPA tariffs to UPS. This included $61.95 in "Government Charges" and $14.00 in "UPS Brokerage and Partner Government Agency Fees."

74. At no point did Plaintiff Pabon contract with UPS to deliver him the car parts he had purchased.

***Plaintiff Nicholas Semrau***

75. On or around September 8, 2025, Plaintiff Semrau purchased an Indonesian-origin knit hat from an eBay seller in Canada for $65.99 CAD, plus $8.00 CAD for shipping and $6.26 CAD for sales tax, for a total of $80.25 CAD (or $60.43 USD based on the exchange rate at purchase: 1 USD = 1.32804 CAD).

76. When he placed the order, Plaintiff Semrau did not know that UPS would be the company responsible for shipping the goods to him, nor did he know

that he would be assessed a tariff and related fees.

77. At no point during the purchase process did Plaintiff Semrau select UPS to ship him the goods he had purchased.

78. On or about September 9, 2025, after Plaintiff Semrau had already paid for the knit hat and shipping, UPS sent him an email notification, with the subject line "Payment is Due at Delivery", which stated "you can now pay for your EBAY CANADA package or pay your driver. Total Amount Due $39.55 USD. Additional charges may have been applied based on recent tariff policy changes."

79. Of the $39.55 USD "duties, taxes, and processing fees" UPS collected from Plaintiff, approximately $9.44 USD was for the voided and invalid IEEPA tariffs, $3.93 USD was for other duties, and $0.17 USD was for CBP's Merchandise Processing Fee. UPS charged the remaining $26.01 USD, nearly 3x the IEEPA duties, for "administrative, brokerage, and disbursement fees." CBP did not impose these charges on UPS.

80. In other words, despite UPS's representation that the $39.55 Plaintiff owed was due to "recent tariff policy changes," 65 percent of the fees UPS charged Plaintiff ($26.01) were not actual tariff or shipping costs incurred by UPS.

81. UPS capitalized on the confusion surrounding the sudden imposition of broad, sweeping tariffs on consumer goods and embedded fees for profit within

duties incurred from CBP pursuant to IEEPA tariffs and failed to disclose that these purported tariff charges were inflated and discretionary.

82. UPS's invoice to Plaintiff failed to explain how these fees were calculated, whether they reflected actual costs, or whether UPS retained any portion of the fees.

83. In reliance on UPS's representations, Plaintiff paid these charges. As a result, Plaintiff suffered economic injury by paying the now voided IEEPA tariffs and the inflated and deceptive fees.

84. At no point did Plaintiff Semrau contract with UPS to deliver him the hat he had purchased.

***Plaintiff Kelly***

85. On or around February 2026, Plaintiff Kelly purchased items for her bathroom from an eBay seller. The seller was located in the United Kingdom.

86. When she placed the order, Plaintiff Kelly was required to use the shipment options provided by the seller and did not make shipping arrangements directly with UPS. Nevertheless, she would pay the required shipping and handling fees believing that was all that was necessary to finalize the purchase beyond paying the seller's purchase price. She did not know that she would be assessed a tariff and related fees after-the fact.

87. At no point during the purchase process did Plaintiff Kelly directly deal

with UPS to ship her the goods she purchased. As such, she did not sign any contracts with UPS or enter into any binding arbitration agreements with them.

88. After her purchase, Plaintiff Kelly was contacted by UPS to pay tariff related import charges and associated brokerage and processing fees in the amount of $65.88. Payment of these charges came as a surprise to her as she believed she paid all shipping costs at the time of purchase.

89. Nonetheless, Plaintiff Kelly paid UPS the $65.88 in tariff related import charges and associated brokerage and processing fees in order to obtain the items she purchased.

90. At no point did Plaintiff Kelly contract with UPS to deliver her the items she purchased.

## CLASS ACTION ALLEGATIONS

91. Plaintiffs bring this action on behalf of themselves and as a class action for all others similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class is defined as follows:

> **Nationwide Class:** All individuals or entities that paid Defendant fees, surcharges, duties, and other tariff-related amounts purportedly imposed pursuant to tariffs declared under the IEEPA (the "Class").
>
> **New York Subclass:** All individuals or entities in the State of New York that paid Defendant fees, surcharges, duties, and other tariff-related amounts purportedly imposed pursuant to tariffs declared under the IEEPA (the "New York Subclass").
>
> **North Carolina Subclass:** All individuals or entities that paid

Defendant fees, surcharges, duties, and other tariff-related amounts purportedly imposed pursuant to tariffs declared under the IEEPA (the "North Carolina Subclass").

**Kansas Subclass:** All individuals or entities that paid Defendant fees, surcharges, duties, and other tariff-related amounts purportedly imposed pursuant to tariffs declared under the IEEPA (the "Kansas Subclass").

92. This Nationwide Class, New York Subclass, North Carolina Subclass, and Kansas Subclass shall be referred to herein as the "Class."

93. Plaintiffs reserve the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

94. Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

95. **Ascertainability.** The particular members of the Class are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable and ascertainable because the Class is defined based on objective criteria. Defendant or its affiliates and agents possess the information and records to identify and contact Class Members.

96. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide

basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

97. The proposed Class is so numerous that the joinder of all members is impracticable.

98. This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

99. **Numerosity (Fed. R. Civ. P. 23(a)(1)):** Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown currently, such information is in the sole possession of Defendant and obtainable by Plaintiffs only through the discovery process.

100. **Commonality (Fed. R. Civ. P. 23(a)(2)):** There are questions of law and fact common to the Class that are capable of generating common answers, including: whether Defendant engaged in the uniform conduct, practices, representations, omissions, or policies alleged herein; whether Defendant's conduct was unlawful, unfair, deceptive, misleading, or otherwise actionable under applicable federal and state law; whether Defendant knew or should have known of the tariffs and custom duties imposed were done so unlawfully; whether Defendant's conduct caused injury to Plaintiffs and Class Members; whether Defendant was unjustly enriched as a result of the conduct alleged herein; and whether Defendant

is liable to Plaintiffs and Class Members for damages, restitution, disgorgement, or other equitable relief.

101. **Typicality (Fed R. Civ. P. 23(a)(3)):** Plaintiffs' claims are typical of the claims of the members of the Class, because, *inter alia*, all Class Members have been injured through the uniform misconduct described above. Moreover, Plaintiffs' claims are typical of the Class Members' claims because Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

102. **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiffs will fairly and adequately protect the interest of the members of the Class. Plaintiffs and the members of the Class were all assessed tariffs and other collection duties as a result of the tariffs imposed by the United States pursuant to IEEPA. Plaintiffs have retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no antagonistic interests to those of the Class, and Defendant has no defenses unique to Plaintiffs.

103. **Injunctive and/or Declaratory Relief (Fed. R. Civ. P. 23(b)(2))**: Defendant has acted on grounds that apply generally to the proposed Class, making declaratory and injunctive relief appropriate with respect to the proposed Class as a whole. Defendant's uniform practice of collecting tariffs imposed by the United

States pursuant to IEEPA from consumers and failing to reimburse consumers for these unlawful tariffs warrants class-wide declaratory and injunctive relief.

104. **Predominance and Superiority (Fed. R. Civ. P. 23(b)(3)):** A class action is superior to all other available means for the fair and efficient adjudication of claims of Plaintiffs and Class Members. There are questions of law and fact common to all Class Members that predominate over questions affecting only individual Class Members. The damages or other financial detriment suffered by individual Class Members is relatively small compared to the burden and expense that would be incurred by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs committed against him or her. Further, even if the Class Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. On the other hand, the class action device provides the benefits of adjudication of these issues in a single proceeding, economics of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

105. Plaintiffs seek monetary damages, including compensatory damages on

behalf of the Class, and other equitable relief on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described. Unless a Class is certified, Defendant will be allowed to profit from their unfair and unlawful practices, while Plaintiffs and the members of the Class will have suffered damages. Unless a Class-wide injunction is issued, Defendant may continue to benefit from these alleged violations, and the members of the Class may continue to be unfairly treated making final injunctive relief appropriate with respect to the Class as a whole.

106. These common questions are capable of class wide resolution because they arise from Defendant's uniform conduct and do not depend on individualized proof. The determination of these issues will resolve central aspects of Defendant's liability in a single adjudication and will materially advance the resolution of this litigation.

## CAUSES OF ACTION

### COUNT I
### UNJUST ENRICHMENT
### (On Behalf of Plaintiffs and the Class)

107. Plaintiffs incorporate each of the allegations in paragraphs 1-106 as if fully set forth herein.

108. Plaintiffs plead the equitable remedy of "unjust enrichment" or "restitution" as an equitable remedy because there was no contract between the

Plaintiffs and Defendant.

109. Plaintiffs and the Class have made payments to Defendant and Defendant has retained refunds (and anticipates further refunds) to which, as between them and Defendant, Plaintiffs and the Class have a superior legal or equitable right.

110. Plaintiffs and Class Members conferred a direct financial benefit upon Defendant by paying tariffs and tariff-related charges, fees, and surcharges imposed by Defendant.

111. Defendant had knowledge of the benefit conferred by Plaintiffs and Class Members.

112. Defendant knowingly and voluntarily received and accepted these benefits.

113. The tariff-related charges Defendant imposed and collected were unlawful and unauthorized.

114. Defendant collected and retained funds to which they were not legally entitled.

115. Defendant also collected brokerage fees, administrative fees, and related charges based upon unlawful tariffs.

116. Defendant retained these funds despite knowing, or having reason to know, that such charges were unlawful, invalid, or subject to refund.

117. It would be inequitable and unjust for Defendant to retain these funds.

118. Plaintiffs and the Class Members are entitled to recover from Defendant regardless of whether Defendant, as the "importer of record" (or whether there is another importer of record), ultimately receives a refund from the United States. It would be manifestly unjust and inequitable for Defendant to retain money that Plaintiffs and the Class Members wrongfully paid to Defendant, regardless of whether Defendant is reimbursed any of that money, but that is especially true if Defendant is reimbursed any of that money.

119. Plaintiffs and Class Members suffered economic injury as a result of Defendant's unjust retention of these funds.

120. Defendant was unjustly enriched at the expense of Plaintiffs and Class Members.

121. Equity and good conscience require that Defendant disgorges all unlawfully obtained funds and make restitution to Plaintiffs and Class Members.

122. As a direct and proximate result of Defendant's unfair and deceptive trade practices, Plaintiffs and the Class have suffered actual financial injury in an amount to be determined at trial.

**COUNT II**
**Violation of the New York General Business Law § 349**
**(On behalf of Plaintiff Pabon and the New York Subclass)**

123. Plaintiffs incorporate each of the allegations in paragraphs 1-106 as if

fully set forth herein.

124. Plaintiffs bring this cause of action on behalf of themselves and members of the New York Subclass against Defendant.

125. Plaintiffs and New York Subclass members are "persons" within the meaning of the GBL § 349(b).

126. Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of § 349(b).

127. Under GBL § 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce are unlawful."

128. Defendant engaged in unfair, deceptive, and materially misleading acts and practices in the conduct of trade or commerce by:

a. Deceptively and unfairly charging individual consumers and businesses like Plaintiffs for IEEPA tariffs, that Defendant knew or should have known were illegal and void;

b. Deceptively and unfairly charging individual consumers and businesses like Plaintiffs fees connected to Defendant's role as a customs broker and importer of record, fees that would not have been imposed but for the IEEPA tariffs Defendant knew, should have known, and later came to know were illegal and void, and profiting by assessing said fees because, among other things, such fees were in excess of Defendant's actual costs for services;

c. Failing to refund money paid by consumers to Defendant to pay illegal IEEPA tariffs, thus causing financial harm to individual consumers and businesses like Plaintiffs; and

d. Failing to refund money paid by consumers to Defendant in the form of fees charged by Defendant in its role as a customs broker and importer

of record, thus causing financial harm to individual consumers and businesses like Plaintiffs, including, but not limited to, fees in excess of Defendant's actual costs for services.

129. As a direct and proximate result of Defendant's unfair and deceptive trade practices, Plaintiffs and the Class have suffered actual financial injury in an amount to be determined at trial.

**COUNT III**
**Violation of N.C. Gen. Stat. § 75-1.1**
**(On behalf of Plaintiff Kulzhanova and the North Carolina Subclass)**

130. Plaintiffs incorporate each of the allegations in paragraphs 1-106 as if fully set forth herein.

131. Plaintiffs bring this cause of action on behalf of themselves and members of the North Carolina Subclass against Defendant.

132. Under N.C. Gen. Stat. § 75-1.1, "unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."

133. Defendant engaged in unfair, deceptive, and materially misleading acts and practices in the conduct of trade or commerce by:

a. Deceptively and unfairly charging individual consumers and businesses like Plaintiffs for IEEPA tariffs, that Defendant knew or should have known were illegal and void;

b. Deceptively and unfairly charging individual consumers and businesses like Plaintiffs fees connected to Defendant's role as a customs broker and importer of record, fees that would not have been imposed but for the IEEPA tariffs Defendant knew, should have known, and later came to know were illegal and void, and profiting by assessing said fees because, among other things,

such fees were in excess of Defendant's actual costs for services;

c. Failing to refund money paid by consumers to Defendant to pay illegal IEEPA tariffs, thus causing financial harm to individual consumers and businesses like Plaintiffs; and

d. Failing to refund money paid by consumers to Defendant in the form of fees charged by Defendant in its role as a customs broker and importer of record, thus causing financial harm to individual consumers and businesses like Plaintiffs, including, but not limited to, fees in excess of Defendant's actual costs for services.

134. As a direct and proximate result of Defendant's unfair and deceptive trade practices, Plaintiffs and the Class have suffered actual financial injury in an amount to be determined at trial.

**COUNT IV**
**Violation of the Kansas Consumer Protection Act**
**(On behalf of Plaintiff Semrau and the Kansas Subclass)**

135. Plaintiffs incorporate all each of the allegations in paragraphs 1-106 as if fully set forth herein.

136. Plaintiffs bring this cause of action on behalf of themselves and members of the Kansas Subclass against Defendant.

137. This cause of action is brought pursuant to the Kansas Consumer Protection Act §§ 50-623 *et seq*. (the "KCPA").

138. Plaintiffs and Kansas Subclass Members are "consumers" as the term is defined by K.S.A. § 50-624 because they acquired services at issue for personal, family, household, business or agricultural purposes.

139. UPS is a "supplier" as the term is defined by K.S.A. § 50-624 because in its ordinary course of business, it regularly solicits, engages in or enforces consumer transactions.

140. The transactions at issue constitute "consumer transactions" under K.S.A. § 50-624.

141. The conduct alleged in this complaint constitutes deceptive and unconscionable acts and practices for the purposes of the KCPA (K.S.A. § 50-626-27), and the conduct undertaken by UPS in transactions resulted in the sale of services to consumers.

142. As alleged more fully above, UPS violated the KCPA by falsely and deceptively representing to Plaintiffs and the Kansas Subclass that UPS incurred and was merely passing through IEEPA related tariff charges. In reality, UPS inflated these charges and embedded fees for profit within duties incurred from CBP pursuant to the void and invalid IEEPA tariffs.

143. As a result of UPS's conduct, UPS has violated K.S.A § 50-626(b)(2)-(3), and K.S.A. § 50-627(a)-(b).

144. Pursuant to K.S.A. § 50-634(d)-(e), Plaintiffs seek on behalf of themselves and the Kansas Subclass, actual damages, reasonable attorneys' fees, and any other relief the court deems proper.

**COUNT V**
**Breach of Fiduciary Duty**
**(On behalf of Plaintiffs and the Class)**

145. Plaintiffs incorporate each of the allegations in paragraphs 1-106 as if fully set forth herein.

146. Plaintiffs bring this cause of action on behalf of themselves and the Class.

147. As a customs broker, UPS has a fiduciary duty to the importer in fact/consignee (Plaintiffs) and is liable for keeping duties/fees CBP refunds to the Broker, which were paid by the importer in fact/consignee (Plaintiffs).

148. Pursuant to its fiduciary duty as a customs broker, UPS is prohibited from willfully and knowingly deceiving or misleading any client with intent to defraud in the course of its customs business. 19 U.S.C. § 1641

149. The Supreme Court of the United States held that IEEPA does not authorize the imposition of those tariffs and that these tariffs were unlawful.

150. As a result, the tariff-related charges were not only deceiving and misleading, but they were also unlawful and unauthorized. By imposing and failing to return the funds amassed by making these charges, Defendant breached its fiduciary duty to Plaintiffs and the Class.

151. As a result of UPS's breach of its fiduciary duty, Plaintiffs and the Class suffered damages, including but not limited to payment of unlawful tariff-related fees and ongoing loss of use of money.

152. Plaintiffs seeks on behalf of themselves and the Class, actual damages, interest, restitution, and any other relief the court deems proper.

## COUNT VI
## DECLARATORY RELIEF
## (On Behalf of Plaintiffs and the Class)

153. Plaintiffs incorporate each of the allegations in paragraphs 1-106 as if fully set forth herein.

154. An actual, justiciable controversy exists between Plaintiffs and Defendant regarding the rights and obligations of the parties with respect to fees collected by Defendant from Plaintiffs and Class Members authorized by the IEEPA. This controversy is not hypothetical or abstract.

155. Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201 that:

a. Defendant engaged in uniform conduct of charging tariffs authorized by the IEEPA to consumers such as Plaintiffs and Class Members when those tariffs and customs duties were not lawfully authorized;

b. Defendant knew or should have known that the tariffs and customs duties were unlawfully imposed;

c. Defendant's conduct caused injury to Plaintiffs and Class Members; and

d. Defendant is obligated to return to Plaintiffs and proposed Class Members all IEEPA tariffs and customs duties collected from them together with interest.

156. Declaratory relief is necessary and appropriate because Defendant collected duties and fees pursuant to tariffs that the Supreme Court has declared were never lawfully authorized and Defendant has not returned those sums to consumers who paid them. Without judicial intervention, Plaintiffs and the Class have no assurance that Defendant will return the unlawfully collected sums.

157. Class Members have no alternative remedy. Because Defendant served as the importer of record, only Defendant has standing to seek a refund from the government. Individual consumers cannot file suit in the Court of International Trade to recover duties they paid through Defendant. Without the declaratory relief sought in this action, Class Members will be left without any mechanism to recover the unlawful tariffs and fees they were forced to pay.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other Members of the Class alleged herein, respectfully request that the Court enter judgment in their favor and against Defendant as follows:

A. For an order certifying the Class and naming Plaintiffs as the representatives for the Class and Plaintiffs' attorneys as Class Counsel;

B. For an order declaring that Defendant's conduct violates the causes

of action referenced herein;

C. For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

D. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E. For prejudgment interest on all amounts awarded;

F. For an order of restitution and all other forms of equitable monetary relief;

G. For injunctive and declaratory relief as pleaded or as the Court may deem proper;

H. For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit pursuant to O.C.G.A. Section 13-6-11, and as otherwise allowed by law; and

I. For an order providing for all other such equitable relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

Dated: September 8, 2026.

Respectfully Submitted,

*/s/ MaryBeth V. Gibson*

MaryBeth V. Gibson
GA Bar No. 725843
**Gibson Consumer Law Group, LLC**
4279 Roswell Road
Suite 208-108
Atlanta, GA 30342
Telephone: (678) 642-2503
marybeth@gibsonconsumerlawgroup.com

***Plaintiffs' Interim Liaison Counsel***

*/s/ Jeremy R. Williams*
Jeremy R. Williams (admitted *pro*
**Lee Segui PLLC**
421 N. Harrington Street, Suite 460
Raleigh, North Carolina 27603
Telephone: (855) 496-7500
jwilliams@leesegui.com

*/s/ Ryan F. Stephan*
Ryan F. Stephan (admitted *pro hac vice*)
**Stephan Zouras, LLC**
222 W. Adams St., Suite 2020
Chicago, Illinois 60606
312.233.1550
rstephan@stephanzouras.com
Firm ID: 43734

*/s/ Michael R. Reese*
Michael R. Reese (admitted pro hac vice)
**REESE LLP**
5544 Central Avenue
St. Petersburg, Florida 33707
Telephone: 212-643-0500
mreese@reesellp.com

***Plaintiffs' Interim Co-Lead Counsel***

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing pleading has been prepared with Times New Roman, 14-point font, in compliance with L.R. 5.1B.

DATED this 8th day of September, 2026.

**Gibson Consumer Law Group, LLC**

*/s/ MaryBeth V. Gibson*
MaryBeth V. Gibson
GA Bar No. 725843

## CERTIFICATE OF SERVICE

I hereby certify that on this date a copy of the foregoing was filed and served using the Court's CM/ECF system which will send notification of such filing to ECF registered participants.

DATED this 8th day of September, 2026.

**Gibson Consumer Law Group, LLC**

*/s/ MaryBeth V. Gibson*
MaryBeth V. Gibson
GA Bar No. 725843